UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY S. FRUCIANO,<br><br>Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Defendants. | Case No.18-cv-04452-JSC<br><br>**ORDER RE: MOTIONS TO REMAND; MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 5, 10, 12 |

Plaintiff Anthony Fruciano, proceeding pro se, filed this civil action in the Alameda County Superior Court alleging discrimination under the Unruh Act and 42 U.S.C. § 1983 in connection with medical treatment he sought from numerous health care providers beginning in 2016. Defendants, the University of California Regents and Drs. Lue and Reed-Maldonado, separately removed the action to this Court based on federal question jurisdiction. Plaintiff's motions to remand and Defendants' motion to dismiss are now pending before the Court.[1] (Dkt. Nos. 5, 10, 12.) Having considered the parties' briefs, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b) and DENIES the motions to remand because the removals were timely filed pursuant to 28 U.S.C. § 1446(b). The Court GRANTS the motion to dismiss Plaintiff's Unruh Act claim with leave to amend as barred by the statute of limitations and GRANTS the motion to dismiss the Section 1983 claim as to the Regents and Drs. Lue and Reed-Maldonado in their official capacity because they are entitled to Eleventh Amendment immunity. The motion to dismiss is DENIED as to claims against Drs. Lue and Reed-Maldonado in their personal capacity.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 18, 20, 22, 30.)

**BACKGROUND**

**A. Allegations of the Complaint**

Plaintiff is a 53-year old man who has a congenital swallowing disorder and a history of panic attacks. (Dkt. No. 1 at 42 (First Amended Complaint ("FAC") at ¶¶ 17-19.) In April 2016, Plaintiff was referred to Dr. Lue, an urologist who specialized in penile abnormalities for a consultation regarding his curved penis. (*Id*. at ¶ 29.)

Plaintiff arrived for his appointment with Dr. Lue at the University of California Urology Clinic on May 22, 2016 and was surprised that both Dr. Lue, and his fellow, Dr. Reed-Maldonado, entered his exam room.[2] (*Id*. at ¶ 32.) Dr. Reed-Maldonado then escorted Plaintiff to another room for a duplex Doppler ultrasound. (*Id*. at ¶¶ 32-33.) Dr. Reed-Maldonado directed Plaintiff to "drop his pants" and injected his penis with Prostaglandian E1 to induce an erection. (*Id*. at 34-35.) Dr. Reed-Maldonado then exited the room and advised Plaintiff to "stimulate himself," but he was unsuccessful in doing so. When Dr. Reed-Maldonado returned to the room she "grabbed the plaintiff's penis and roughly jerked it up and down, up and down...and said 'Come on, wake up. Get up. Man up.'" (*Id*. at ¶ 88.) Dr. Lue eventually returned to the room and moved the ultrasound transducer "along the surface of plaintiff's still flaccid penis." (*Id*. at ¶ 38.) Dr. Lue then compared Plaintiff unfavorably to a younger patient he had seen earlier that day whose "erection pointed to the ceiling." (*Id*. at ¶ 39.) Plaintiff suggested that Dr. Lue give him a second injection, but Dr. Lue refused saying it "would be a waste of time, because [the plaintiff was] too anxious." (*Id*. at ¶ 40 (alterations in original).) Plaintiff thus offered Dr. Lue a photo he had taken of his erect penis, but Dr. Lue never looked at it. (*Id*. at ¶ 42.) Instead, Dr. Lue wrote Plaintiff a prescription for nightly Levitra. (*Id*. at ¶ 43.) Dr. Lue apparently later told another urologist, Dr. Karpman that he should pat Plaintiff on the head and "get rid of a useless guy [like Plaintiff]." (*Id*. at ¶ 44.)

The next day, Plaintiff discovered that Dr. Reed-Maldonado had access to Dr. Lue's email. (*Id*. at ¶ 45.) A month later when Plaintiff requested a follow-up appointment, he asked that Dr.

---

[2] Although Plaintiff refers to Dr. Reed-Maldonado as Dr. Reed, the Court uses her full name throughout.

2

1 Reed-Maldonado not be involved because "he felt more uncomfortable and anxious with a woman in the room." (*Id*. at ¶ 91.) In response, Plaintiff received a letter in the mail which terminated the doctor-patient relationship and barred Plaintiff from seeing any physician at the University of California's Faculty Urology Practice. (*Id*. at ¶ 46.) Although the letter was signed by Dr. Lue, Plaintiff believes Dr. Reed-Maldonado wrote it because the level of English in it was not what would be expected of a non-native English speaker such as Dr. Lue. (*Id*.) Plaintiff telephoned the University of California's patient liaison office to complain and was told that two administrators would review the situation, but they "found nothing amiss." (*Id*. at ¶ 48.)

The remainder of the allegations in Plaintiff's 38-page Complaint involve claims regarding medical care Plaintiff received from other defendants not involved in the present motions.

**B. Procedural Background**

Plaintiff filed this civil action in the Alameda County Superior Court on May 22, 2018 against the Regents, Dr. Lue, Dr. Reed-Maldonado, Stanford Health Care, Dr. Eisenberg, El Camino Hospital, Urological Surgeons of Northern California, Dr. Karpman, and Does 1-25. (Dkt. No. 1 at 8.) Plaintiff pled three claims for relief under the Unruh Act, Cal. Civ. Code § 51, against all of the defendants, and a claim for sexual harassment under Cal. Civ. Code § 51.9 against the Regents, Dr. Lue, and Dr. Reed-Maldonado. Just over two weeks later, Plaintiff filed his First Amended Complaint changing his sexual harassment claim to a claim under 42 U.S.C. § 1983 against the Regents, Dr. Lue, and Dr. Reed-Maldonado. (*Id*. at 42.)

On July 23, 2018, the Regents removed the action to federal court based on federal question jurisdiction. (Dkt. No. 1.) Drs. Lue and Reed-Maldonado joined in the removal on July 27, 2018.[3] (Dkt. No. 8.) Plaintiff then moved for remand contending the removals were untimely. (Dkt. No. 5 & 12.) The Regents and Drs. Lue and Reed-Maldonado opposed the motions to remand, and moved to dismiss the complaint for failure to state a claim. (Dkt. Nos. 10, 19, 29.) Dr. Eisenberg and Stanford Health Care answered the complaint as did Urological Surgeons of Northern California and Dr. Karpman. (Dkt. Nos. 16 & 17.)

---

[3] The other Defendants have also all joined in removal. (Dkt. Nos. 14, 17 & 26.)

3

**DISCUSSION**

**I. Motions to Remand**

The Regents removed this action on July 23, 2018, and then, four days later, Drs. Lue and Reed-Maldonado joined in removal of the action. (Dkt. Nos. 1 & 8.) Plaintiff separately moved to remand each removal as untimely. (Dkt. Nos. 5 & 12.)

For removal to federal court to be timely, a defendant must file a notice of removal within 30 days of receiving "through service or otherwise [a] copy of the initial pleading setting forth the claim for relief ...." 28 U.S.C. § 1446(b). In *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), the Supreme Court explained that under 28 U.S.C. § 1446(b), "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347. Accordingly, the Court held "that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347–48. Formal service of process is measured by the service date according to state law. *See Chin v. Washington Mut. Bank, F.A.*, No. 18-CV-02143-YGR, 2018 WL 3392138, at *3 (N.D. Cal. July 12, 2018) (holding that section 1446's 30-day removal provision was triggered by the day service was complete under California Civil Code section 415.20); *Rosset v. Hunter Eng'g Co.*, No. C 14-01701 LB, 2014 WL 3569332, at *5 (N.D. Cal. July 17, 2014) (holding that the 30-day period for removal was triggered by formal service under California law); *Madren v. Belden, Inc.*, No. 12-CV-01706-RMW, 2012 WL 2572040, at *2 (N.D. Cal. July 2, 2012) ("Formal service of process, measured from the service date according to state law, is a prerequisite for triggering the 30–day removal period"); *Varga v. United Airlines*, No. C 09-02278 SI, 2009 WL 2246208, at *3 (N.D. Cal. July 24, 2009) (same).

In California, a plaintiff may serve process by mail where the mailing includes a copy of the summons and complaint, two copies of a notice and acknowledgment form, and a pre-paid return envelope. *See* Cal. Code Civ. Proc. § 415.30(a). Service by mail is complete on the date the notice form is executed, provided that it is returned to the sender. *See* Cal. Code Civ. Proc. § 415.30(c). A nonresident defendant can be served by mailing the defendant copies of the

4

summons and complaint "by first-class mail, postage prepaid, requiring a return receipt" and service is deemed complete "on the 10th day after such mailing." Cal. Code Civ. Pro. § 415.40. Personal service is deemed complete at the time of delivery. *See* Cal.Code Civ. Proc. § 415.10.

Here, Plaintiff served the Regents by priority mail on June 19, 2018 with an acknowledgment of receipt of service. (Dkt. No. 5 at 15.[4]) Kormal Chokshi, Senior Litigation Counsel for the Regents, signed and returned the acknowledgment of receipt on June 25, 2018. (*Id*. at 17.) That the Post Office tracking receipt shows that the package containing the summons and complaint was delivered on June 20 is of no moment given that the Regents were served pursuant to Section 415.30 which provides that service is complete on the date the notice form is executed—here June 25, 2018. *See* Cal. Code Civ. Proc. § 415.30(c). Service on Dr. Lue was complete on July 9 when Plaintiff personally served him. (Dkt. No. 12 at 20 (Fruciano Declaration) ¶ 7.) Plaintiff's prior attempt to serve Defendant Lue by mail was ineffective notwithstanding Plaintiff's contention that the priority mail package containing the summons and complaint was received in the UCSF Department of Urology on June 21, 2018 because Dr. Lue never returned the acknowledgement of service. (*Id*. at ¶¶ 6-7.) As for Dr. Reed-Maldonado, service was complete on June 29 because she was served on June 19, 2018 at a business address in Washington pursuant to section 415.40, which provides that service on a non-resident defendant is effective 10 days after service. *See* Cal. Code Civ. Pro. § 415.40.

Plaintiff's argument that the 30-day deadline begins to accrue when the summons and complaint were delivered—as opposed to when they were received—is wrong.[5] "Actual notice of the action is insufficient; rather, the defendant must be 'notified of the action, and brought under a court's authority, by formal process,' before the removal period begins to run." *Quality Loan Serv.*

---

[4] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[5] Defendant Reed-Maldonado's argument that removal would be proper at any time under 28 U.S.C. § 1442(a)(1) because Dr. Reed-Maldonado is an active duty member of the United States Army is likewise unavailing. Because Defendant Reed-Maldonado did not raise this as a basis for removal in her notice of removal, she is time-barred from now doing so. *See Seeds v. Era Alaska*, 607 F. App'x 726, 727 (9th Cir. 2015) (holding that "[a]lthough [defendant's] opposition to the motion to remand did raise federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1) as an additional ground for removal, its attempt to do so was untimely because more than 30 days had passed since [defendant] was served with the complaint.").

*Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1132–33 (9th Cir. 2011) (quoting *Murphy Bros.*, 526 U.S. 344, 347). Formal process is whatever process Plaintiff used to effectuate service here: Section 415.30 (mail service on a resident defendant) in the case of the Regents, Section 415.10 (personal service) in the case of Dr. Lue, and Section 415.40 in the case of Dr. Reed-Maldonado (mail service on a non-resident defendant). Because each Defendant removed within 30 days of the effective service date, removal was timely.

Accordingly, Plaintiff's motions for remand are DENIED.

## II. Motion to Dismiss

The Regents and Drs. Lue and Reed-Maldonado contend that they are immune from suit under Section 1983 and move to dismiss the Unruh Act claims as barred by the statute of limitations, and alternatively, for failure to state a claim.

### A. Plaintiff's Section 1983 Claim

Plaintiff bring this suit pursuant to 42 U.S.C. § 1983, which creates a right of action against "[e]very person" who, acting under color of law, violates a federal right. Defendants contend that they are not persons for purposes of Section 1983 because they are immune under the Eleventh Amendment.

#### 1) The Regents have Eleventh Amendment Immunity

The Eleventh Amendment bars suits against States and state agencies in federal courts where the State has not waived its immunity. *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1402 (N.D. Cal. 1997) aff'd, 237 F. 3d 1026 (9th Cir. 2001) (internal citations omitted). The State of California has not waived its immunity from Section 1983 lawsuits. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). "The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983." *Armstrong v. Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992); *see also Associated Students of University of California at Santa Barbara v. Regents of University of California*, 2007 WL 196747, at *3 (N.D. Cal. Jan. 23, 2007) (finding that the Regents are immune from suit under 42 U.S.C. § 1983 because they are not "persons" within the meaning of the statute). Plaintiff's argument that the Court should

reconsider this issue and find that the Regents are no longer an arm of the state given their relative independence is unavailing. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (holding that while the Regents enjoy substantial autonomy, the dispositive inquiry is California's legal liability for the Regents which necessitates a finding that "the University is an arm of the State of California"). The Court is required to follow Ninth Circuit law. Plaintiff's Section 1983 claim against the Regents is thus dismissed with prejudice.

### 2) Immunity does not Apply to Personal Capacity Claims

Suits against employees of the Regents in their official capacity are treated "as a suit against the state of California." *Holley v. California Dep't Of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010). "[A] suit "against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).

Plaintiff concedes that the FAC does not specify what capacity Drs. Lue and Reed-Maldonado are sued in, but urges the Court to read the FAC broadly as naming them in their official and individual capacities. Defendants insist that because the claim is based on their provision of medical care while Plaintiff was at a medical appointment on May 22, 2016, they are only sued in their official capacity. However, official capacity "is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Where a plaintiff is seeking damages against a state official, a strong presumption is created in favor of a personal-capacity suit because an official-capacity suit for damages would be barred. *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999). Here, Plaintiff seeks exemplary damages against Drs. Lue and Reed-Maldonado which would only be available if they were sued in their individual capacities. (Dkt. No. 1 at 72 (FAC Prayer for Relief).) The Court thus presumes that Plaintiff has named Drs. Lue and Reed-Maldonado in their official and individual capacities.

Defendants' motion to dismiss is granted as the claim against Drs. Lue and Reed-Maldonado in their official capacities, but denied to the extent that they are sued for damages in their individual capacities.

**B. Plaintiff's Unruh Act Claims**

The Unruh Act, Section 51 provides in relevant part, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "Its purpose is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act." *Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1448 (2006) (internal citation and quotation marks omitted).

### 1) Statute of Limitations

Defendants insist that Plaintiff's Unruh claim is barred by the one-year statute of limitations for claims arising out of medical malpractice. In response, Plaintiff maintains that he pled Unruh Act claims and not medical malpractice claims and that his complaint is about the discrimination he encountered seeking medical care from Defendants, not the quality of the care he received.

Under the Medical Injury Compensation Reform Act (MICRA), there is a one-year statute of limitation on medical malpractice claims. *See* Cal. Civ. Proc. Code § 340.5 ("In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." ). "[W]hen a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger MICRA." *Smith v. Ben Bennett, Inc.*, 133 Cal. App. 4th 1507, 1514 (2005). To make this determination, the court must "examin[e] the legal theory underlying the particular claim and the nature of the conduct challenged to determine whether, under California law, it would constitute 'professional negligence' subject to Civil Code section 3333.2." *Barris v. Cty. of Los Angeles*, 20 Cal. 4th 101, 116 (1999).

Plaintiff's first claim for relief concerns his May 22, 2016 appointment with Drs. Lue and

8

Reed-Maldonado at the University of California Medical Center in San Francisco, and a letter he received from Dr. Lue thereafter terminating the relationship and advising Plaintiff that he was barred from seeing any physician in the Urology Practice. (Dkt. No. 1 at ¶¶ 28-47.) The allegations all sound in medical negligence. Plaintiff describes in detail what happened during the visit including several things which he alleges were improper: failing to follow standard protocol for administering the Doppler ultrasound (*id.* at ¶ 35); being told to stimulate himself without being given the opportunity to wash his hands (*id.* at ¶¶ 35-37); being given an "unacceptably weak" injection (*id.* at ¶ 36); Dr. Lue unfavorably comparing Plaintiff to another patient who had the same procedure and achieved an "erection [that] pointed to the ceiling" (*id.* at ¶ 39); Dr. Lue refusing to give Plaintiff a second injection to achieve and erection because "it would be a waste of time, because [the plaintiff was] too anxious" (*id.* at ¶ 41 (alterations in original)); Dr. Lue's failure to examine Plaintiff's penis "[b]ecause the injection had not induced an erection" (*id.* at ¶ 42); Dr. Lue refusing to look at a photograph of Plaintiff's erect penis (*id.*); Dr. Lue writing Plaintiff a refillable prescription for nightly Levitra although a "pill, be it Levitra or any other, has never straightened anyone's penis" (*id.* at ¶ 43); and Dr. Lue's letter terminating the doctor-patient relationship and barring Plaintiff from seeing any physician in the Urology Practice (*id.* at ¶ 46). Thus, Plaintiff's complaint about shabby treatment is at bottom a claim of professional negligence under California Civil Code section 3333.2. *See Unruh–Haxton v. Regents of University of California*, 162 Cal.App.4th 343, 353 (2008).

While Plaintiff states in a conclusory fashion that he was "attended to shabbily" and "terminated unjustly" because of his disabilities and his sexual orientation in violation of the Unruh Act (*id.* at ¶ 49), his complaint's factual allegation do not plausibly allege such discrimination. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.") The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). To establish a claim for violation of the Unruh Act, with an exception not relevant to the allegations of this lawsuit, a plaintiff must prove intentional discrimination by a business

9

establishment. *See Cohn v. Corinthian Colleges, Inc.*, 169 Cal. App. 4th 523, 528 (2008) ("The Unruh Act requires intentional discrimination to protect against "all unreasonable, arbitrary, or invidious discrimination."). That is, the Unruh Act requires allegations of a defendant's "willful, affirmative misconduct." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 853 (2005)). Construing the pleadings liberally and drawing all reasonable inferences in favor of Plaintiff, his allegations regarding his May 22, 2016 visit with Drs. Lue and Reed-Maldonado do not amount to "affirmative willful misconduct" of disability or sexual orientation discrimination by Defendants. Plaintiff has alleged that the doctors were insensitive and even rude, and that they provided inadequate treatment for his medical condition, but there are no allegations which plausibly suggest that this was because of Plaintiff's anxiety or swallowing disorder or his asexual sexual orientation. What is left, then, is a medical malpractice claim that is barred by the statute of limitations in section 340.5.

Accordingly, Plaintiff's Unruh Act claim, which is predicated on medical malpractice as currently pled, is dismissed as barred by the statute of limitations. The dismissal is with leave to amend.

## CONCLUSION

For the reasons stated above, Plaintiff's motions for remand are DENIED. (Dkt. Nos. 5 & 12.) Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. (Dkt. No. 10.) Plaintiff's Section 1983 claim against the Regents and Drs. Lue and Reed-Maldonado in their official capacities is dismissed with prejudice. Plaintiff's Section 1983 claim against Drs. Lue and Reed-Maldonado in their individual capacities shall proceed. Plaintiff's Unruh Act claim against the Regents and Drs. Lue and Reed-Maldonado is dismissed with leave to amend to allege a claim that is not barred by the statute of limitations, provided such claim can be alleged in good faith. Plaintiff's amended complaint, if any, shall be filed within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 5, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge