UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ANTHONY S. FRUCIANO, | Case No.18-cv-04452-JSC |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE: UNITED STATES' MOTION TO SUBSTITUTE AS A PARTY AND TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| TOM LUE, M.D., et al., | |
| Defendants. | Re: Dkt. No. 69 |

Plaintiff Anthony Fruciano, representing himself, alleges discrimination under the Unruh Act and 42 U.S.C. § 1983 in connection with medical treatment he sought from numerous health care providers. After the defendants all filed motions to dismiss and/or strike Plaintiff's Second Amended Complaint, the United States sought to substitute itself for Defendant Dr. Reed-Maldonado and sought to dismiss the claims pled against her for lack of subject matter jurisdiction.[1] (Dkt. Nos. 49, 50, 51, 52, 69.) Having considered the briefing submitted and having had the benefit of oral argument on April 4, 2019, the Court provisionally GRANTS the motion to substitute the United States. Having allowed the United States to substitute for Dr. Reed-Maldonado, the Court GRANTS the United States' motion to dismiss with leave to amend. Assuming the United States must be substituted for Dr. Reed-Maldonado, Plaintiff cannot maintain a Section 1983 claim against the United States and he has not exhausted his Unruh Act claim which must be brought under the Federal Tort Claims Act. The other defendants' motions

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 18, 20, 22, 30, 97.)

are addressed by separate Order.

**BACKGROUND**

**A.    Second Amended Complaint Allegations**

Plaintiff is a 53-year old man who has a congenital swallowing disorder and a history of panic attacks. (Dkt. No. 45 (Second Amended Complaint ("SAC") at ¶¶ 17-19.[2]) In addition, since the onset of puberty his penile erections have been curved. (*Id.* ¶ 21.) In April 2016 Plaintiff was referred to Dr. Lue, an urologist who specialized in penile abnormalities, for a consultation regarding his curved erections. (*Id.* at ¶ 29.)

Plaintiff arrived for his appointment with Dr. Lue at the University of California Urology Clinic on May 22, 2016 and was surprised that both Dr. Lue, and his fellow, Dr. Reed-Maldonado, entered his exam room.[3] (*Id.* at ¶ 32.) Dr. Reed-Maldonado then escorted Plaintiff to another room for a duplex Doppler ultrasound (DDUS). (*Id.* at ¶ 32.) Dr. Reed-Maldonado directed Plaintiff to "drop his pants" and injected his penis with 0.1 ml of bitmax: papaverine, 30 mg/mL; phentolamine, 0.5 mg/mL to induce an erection. (*Id.* at ¶¶ 34, 88.) Dr. Reed-Maldonado then exited the room and advised Plaintiff to "stimulate himself," but he was unsuccessful in causing an erection. (*Id.*) When Dr. Reed-Maldonado returned to the room she "grabbed the plaintiff's penis and roughly jerked it up and down, up and down...and said 'Come on, wake up. Get up. Man up.'" (*Id.* at ¶ 88.) Dr. Lue eventually returned to the room and moved the ultrasound transducer "along the surface of plaintiff's still flaccid penis." (*Id.* at ¶ 36.) Dr. Lue then compared Plaintiff unfavorably to a younger patient he had seen earlier that day whose "erection pointed to the ceiling." (*Id.* at ¶ 37.) Plaintiff suggested that Dr. Lue give him a second injection, but Dr. Lue refused saying it "would be a waste of time, because [the plaintiff was] too anxious." (*Id.* at ¶ 38 (alterations in original).) Plaintiff offered Dr. Lue a photo he had taken of his erect penis, but Dr. Lue never looked at it. (*Id.* at ¶ 40.) Instead, Dr. Lue wrote Plaintiff a prescription for nightly Levitra. (*Id.* at ¶ 41.)

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] Although Plaintiff refers to Dr. Reed-Maldonado as Dr. Reed, the Court uses her full name throughout.

2

1        The next day, Plaintiff discovered that Dr. Reed-Maldonado had access to Dr. Lue's email. (*Id*. at ¶ 45.) A month later, when Plaintiff requested a follow-up appointment, he asked that Dr. Reed-Maldonado not be involved because "he felt more uncomfortable and anxious with a woman in the room." (*Id*. at ¶ 91.) In response, Plaintiff received a letter in the mail which terminated the doctor-patient relationship and barred Plaintiff from seeing any physician at the University of California Faculty Urology Practice. (*Id*. at ¶ 45.) Although the letter was signed by Dr. Lue, Plaintiff believes Dr. Reed-Maldonado wrote the letter. (*Id*.) Plaintiff telephoned the University of California's patient liaison office to complain and was told that two administrators would review the situation, but they "found nothing amiss." (*Id*. at ¶ 48.)

       The remainder of the allegations in Plaintiff's 38-page Complaint involve claims regarding medical care Plaintiff received from other defendants not involved in the present motion. These factual allegations are discussed at length in the concurrently filed Order regarding the motions to dismiss and strike filed by these other defendants.

**B. Procedural Background**

       Plaintiff filed this civil action in the Alameda County Superior Court on May 22, 2018 against the Regents, Dr. Lue, Dr. Reed-Maldonado, Stanford Health Care, Dr. Eisenberg, El Camino Hospital, Urological Surgeons of Northern California, Dr. Karpman, and Does 1-25. (Dkt. No. 1 at 8.) Plaintiff pled three claims for relief under the Unruh Act, Cal. Civ. Code § 51, against all of the defendants, and a claim for sexual harassment under Cal. Civ. Code § 51.9 against the Regents, Dr. Lue, and Dr. Reed-Maldonado. Just over two weeks later, Plaintiff filed his First Amended Complaint changing his sexual harassment claim to a claim under 42 U.S.C. § 1983 against the Regents, Dr. Lue, and Dr. Reed-Maldonado. (*Id*. at 42.)

       On July 23, 2018, the Regents removed the action to federal court based on federal question jurisdiction. (Dkt. No. 1.) The other defendants thereafter joined in removal. (Dkt. Nos. 8, 14, 17 & 26.) Plaintiff then moved for remand contending the removals were untimely. (Dkt. No. 5 & 12.) The Regents and Drs. Lue and Reed-Maldonado opposed the motions to remand, and moved to dismiss the complaint for failure to state a claim. (Dkt. Nos. 10, 19, 29.) Stanford Health Care and Dr. Eisenberg answered the complaint as did Urological Surgeons of Northern

California and Dr. Karpman. (Dkt. Nos. 16 & 17.) The Court thereafter denied the motion to remand and granted in part and denied in part the motion to dismiss. (Dkt. No. 34.)

Plaintiff then filed the now operative Second Amended Complaint which pleads Unruh Act discrimination claims against (1) Dr. Lue and Dr. Reed-Maldonado (First Claim); (2) Stanford Health and Dr. Eisenberg (Second Claim); (3) Urological Surgeons of Northern California and Dr. Karpman (Third Claim); and a Section 1983 Claim against Drs. Lue and Reed-Maldonado (Fourth Claim). (Dkt. No. 45.) Each of the defendants separately moved to dismiss and Drs. Lue and Reed-Maldonado also filed a motion to strike under Federal Rule of Civil Procedure 12(f). (Dkt. Nos. 49, 50, 51, 52.)

All of the motions were set for hearing on December 6, 2018. However, Plaintiff advised the Court shortly before the hearing that he was ill and unable to attend. In addition, the United States specially appeared on behalf of Dr. Reed-Maldonado and indicated she had tendered her defense of the action to the government. (Dkt. No. 65-1.) The Court, therefore, continued the hearing on the pending motions to January 31, 2019. Dr. Reed-Maldonado thereafter notified the Court that the United States intended to file a motion to substitute and dismiss for lack of subject matter jurisdiction. (Dkt. Nos. 66, 67.) The Court set a briefing schedule for that motion and rescheduled the hearing on the previously filed motions to dismiss to be heard concurrently. (Dkt. Nos. 68, 76, 95.)

**DISCUSSION**

The government moves to substitute itself for Dr. Reed-Maldonado under the Gonzalez Act, 10 U.S.C. § 1089, arguing that a suit against the government under the Federal Tort Claims Act (FTCA) is the exclusive remedy for tort claims against military medical personnel. Assuming the motion to substitute is granted, the government also moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction because the two claims he pled against Dr. Reed-Maldonado either were not exhausted under the FTCA or are not maintainable under the FTCA.

**A. Substitution of the United States Under the Gonzalez Act**

"The Gonzalez Act is one of a series of immunity statutes enacted prior to the Liability Reform Act that were designed to protect certain classes of Government employees from the threat

4

of personal liability." *United States v. Smith*, 499 U.S. 160, 170 (1991). "It provides that a suit against the United States under the FTCA is the exclusive remedy for torts committed by military medical personnel acting within the scope of their government employment." *Ward v. Gordon*, 999 F.2d 1399, 1401 (9th Cir. 1993) (citing 10 U.S.C. § 1089(a)[4]). This is true "even if an FTCA exception precludes recovery against the Government." *Smith*, 499 U.S. at 165.

The government moves to substitute itself for Dr. Reed-Maldonado because at the time of the underlying allegations she was on active duty with the U.S. Army. As evidence that the alleged incident occurred in the scope of Dr. Reed-Maldonado's military duties, the government offers the Declaration of Captain Heather Woodruff, the Detachment Commander of the Army Medical Department Student Detachment for the 187th Medical Battalion, Medical Professional Training Brigade, Fort Sam Houston, Texas. (Declaration of Captain Woodruff, Dkt. No. 69-1 at ¶ 1.) Captain Woodruff commands officers who are participating in graduate medical training while on active duty, and in this context, had access to and reviewed Dr. Reed-Maldonado's records from when she was completing graduate medical training while on active duty. (*Id*. at ¶¶ 1-2.) Captain Woodruff attests that at the time of the underlying allegations Dr. Reed-Maldonado was completing her fellowship in impotence and infertility as a military physician stationed at the University of California San Francisco Medical Center. (*Id*. at ¶ 2.)

Generally, a certification such as Captain Woodruff's is sufficient to establish that Dr. Reed-Maldonado's conduct falls under the Gonzalez Act and that substitution of the United States

---

[4] Section 1089(a) provides in relevant part:

> The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (including medical and dental technicians, nursing assistants, and therapists) of the armed forces, the National Guard while engaged in training or duty under section 316, 502, 503, 504, or 505 of title 32, the Department of Defense, the Armed Forces Retirement Home, or the Central Intelligence Agency in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) whose act or omission gave rise to such action or proceeding.

is proper. *See Hui v. Castaneda*, 559 U.S. 799, 811 (2010) (holding that under a similar statute, 42 U.S.C. § 233(a), which provides immunity to Public Health Services officers and employees, a defendant may make "proof pursuant to the ordinary rules of evidence" that the alleged misconduct "occurred in the course of the [] defendant's duties"). Plaintiff does not dispute the accuracy of Captain Woodruff's declaration, but does dispute whether Dr. Reed-Maldonado's actions as alleged can be considered within the "scope of her government employment." In particular, Plaintiff insists that Dr. Reed-Maldonado's act of masturbating his penis cannot be considered in the scope of her employment.

"Military personnel act within the scope of their government employment if they act in the line of duty." *Ward*, 999 F.2d at 1403 (9th Cir. 1993) (internal citation and quotation marks omitted). "'Line of duty' is defined in turn by the applicable state law of respondeat superior." *Id*. Under California law, an employer is vicariously liable for the torts of its employees committed within the scope of the employment. *See Lisa M. v. Henry Mayo Newhall Mem. Hosp*., 12 Cal.4th 291, 296 (1995). "[T]he employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise." *Purton v. Marriott Int'l, Inc*., 218 Cal. App. 4th 499, 505 (2013) (internal citation and quotation marks omitted). Indeed, "an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." *Lisa M*. 12 Cal.4th at 296–97. However, "a nexus must exist between the employment and the tort if the employer is fairly to be held liable." *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010).

In *Lisa M*., for example, a technician employed by a hospital to give a pregnant patient an ultrasound examination of her abdomen completed the examination and then returned to the patient's room and sexually assaulted her. *Lisa M*., 12 Cal.4th at 298. In determining whether respondeat superior liability applied, the court "ask[ed] first whether the technician's acts were engendered by or an outgrowth of his employment." *Lisa M*., 12 Cal. 4th at 300 (internal citation and quotation marks omitted). The court reasoned that a "sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-

6

related events or conditions." *Id*. at 301. Because the technician was "tak[ing] advantage of solitude with a naive patient to commit an assault for reasons unrelated to his work," the assault was not fairly attributable to his work. *Id*. Next, the court looked to whether the tort was foreseeable. "An intentional tort is foreseeable, for purposes of respondeat superior, only if in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id*. at 302 (internal citation and quotation marks omitted). While the technician "was authorized to [have] physical contact with [the plaintiff], his "assault on plaintiff did not originate with, and was not a generally foreseeable consequence of, that contact." *Id*. at 303. That is, "[n]othing happened during the course of the prescribed examinations to provoke or encourage [the technician's] improper touching of plaintiff." *Id.* Instead, the employee had engaged in "deliberate sexual assault" that was not fairly attributable "to any peculiar aspect of the health care enterprise, but only to 'propinquity and lust.'" *Id.* at 301, 302.

Accepting the facts alleged by Plaintiff as true, Dr. Reed-Maldonado's conduct falls within the scope of her employment unlike the technician in *Lisa M*. Plaintiff saw Dr. Lue—and thus Dr. Reed-Maldonado—for a medical consultation regarding his curved penile erections. To properly examine his penis, it was necessary for Plaintiff to have an erection.[5] To get Plaintiff to achieve an erection Dr. Reed-Maldonado gave Plaintiff an injection of medicine designed to induce an erection and asked Plaintiff to manually stimulate his penis. When that effort was unsuccessful in achieving the desired result, Dr. Reed-Maldonado allegedly attempted to stimulate Plaintiff. As Plaintiff described at oral argument, she gave him "a hand job," stating "Come on, wake up. Get up. Man up," as she did so. The objectionable conduct was thus within the scope of Dr Reed-Maldonado's employment: an effort to get Plaintiff to achieve an erection, a condition needed for diagnostic testing. To put it another way, Dr. Reed-Maldonado's actions cannot be attributed only to "propinquity and lust."

---

[5] Plaintiff alleges that the ultrasound customarily begins with a flaccid penis, but his allegations establish that for part of the examination the patient must have an erection. (Dkt. No. 45 at ¶¶ 33, 38, 74-75; *see also* ¶ 40 (noting that Dr. Lue could not examine Plaintiff's erect penis because Plaintiff was unable to get an erection during the office visit).

7

The facts of *Lisa M.* are different. In that case, after the technician completed his abdominal examination he asked the plaintiff if she would like to learn her baby's gender. When she replied in the affirmative, he sexually fondled her under the false pretense that it was necessary to learn the baby's gender. *Id.* at 295. Indeed, the technician falsely told her he needed to excite her to get "a good view of the baby." *Id.* There was no medical purpose in having the plaintiff "get excited" and thus the technician's conduct was not within the scope of his employment with the hospital. Here, in contrast, it is undisputed that it was within the scope of Dr. Reed-Maldonado's employment to have Plaintiff achieve an erection. Plaintiff's allegation that no competent urologist would attempt to have a patient get an erection by giving the patient "a hand job"—an allegation the Court accepts as true—does not make the conduct fall outside the scope of Dr. Reed-Maldonado's employment for respondeat superior purposes. "[A]n act that, even if misguided, was intended to serve the employer in some way" is within the scope of employment. *Id.* at 298.

The Court acknowledges that courts rarely hold that "an employee's sexual assault or sexual harassment of a third party falls within the scope of employment." *Daza v. Los Angeles Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268 (2016) (collecting cases). There is, however, no rule that sexual assaults are always beyond the scope of employment or that they can only be within the scope of employment in the law enforcement context. *Id.* And the Court is unaware of any case with facts similar to those alleged here; namely, where the plaintiff alleges facts showing that the defendant's conduct was designed to serve the employer (by performing a legitimate medical exam), but instead challenges *how* the defendant attempted to achieve that purpose. Under the unique circumstances alleged here vicarious liability applies and Dr. Reed-Maldonado's alleged sexual battery fell within the scope of her employment.[6]

---

[6] While "[o]rdinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law . . . when 'the facts are undisputed and no conflicting inferences are possible.'" *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 299 (1995). In the context of the analogous Westfall Act—which provides federal employees with immunity if the AG certifies the employee was acting in the scope of their employment at the time the tort was committed—"[t]o rebut the [scope] certification ..., a plaintiff must 'allege sufficient facts that, taken as true, would establish that the defendant's actions

8

Plaintiff's additional arguments—that the government should be equitably estopped from asserting the Gonzalez Act and that the Act does not bar his injunctive relief claim—are likewise unavailing. Equitable estoppel requires "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991). To the extent that Plaintiff asserts that Dr. Reed-Maldonado should be equitably estopped from asserting the Gonzalez Act now, the Court construes this as an argument that Dr. Reed-Maldonado should be estopped from tendering her defense to the United States; but Plaintiff has not alleged that Dr. Reed-Maldonado knew that she could tender her defense to the United States under the Gonzales Act—a predicate for any claim of equitable estoppel. However, even if he could so allege, Plaintiff has not alleged that he was induced to do anything differently because he detrimentally relied on her failure to tender the defense. Further, to the extent that Plaintiff contends that the United States should be equitably estopped from moving to intervene, "when estoppel is sought against the government, there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). Plaintiff has not alleged any affirmative misconduct on the part of the government. To the contrary, the Assistant United States Attorney who specially appeared at the hearing represented that Dr. Reed-Maldonado had only recently tendered the claim to the government and the government has moved expeditiously to appear in this action since that time. Even if he could allege affirmative misconduct, as with any equitable estoppel argument for Dr. Reed-Maldonado, Plaintiff has not suggested that he was induced to do anything differently because he detrimentally relied on the fact that his suit was against Dr. Reed-Maldonado and not the United States.

---

exceeded the scope of his employment.'" *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017) (quoting *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009)). Here, assuming Plaintiff's detailed allegations are true, and drawing all plausible inferences in his favor, Plaintiff's allegations do not establish that Dr. Reed-Maldonado's conduct was outside the scope of her employment.

9

Finally, as to Plaintiff's argument that the Gonzalez Act does not apply to his injunctive relief claim, the language of the Gonzalez Act establishes that "a suit against the United States under the FTCA is the *exclusive* remedy for torts committed by military medical personnel acting within the scope of their government employment." *Ward v. Gordon*, 999 F.2d 1399, 1401 (9th Cir. 1993) (citing 10 U.S.C. § 1089(a)) (emphasis added); *see also Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (holding that "exclusive" under Section 233—which provides immunity to Public Health Services officers and employees using substantially the same language—precluded *Bivens* actions because Congress's used the language "exclusive" and did not carve out any exceptions).

Plaintiff's argument that *Hui* is distinguishable because the immunity language in Section 233 is broader than the immunity afforded under Section 1089 is not persuasive. Plaintiff identifies the title of the respective sections: Section 1089 is titled "Defense of certain suits arising out of medical malpractice," whereas Section 233 is titled "Civil actions or proceedings against commissioned officers or employees." *Compare* 10 U.S.C. § 1089 *with* 42 U.S.C. § 233. However, the text of the two sections is substantively the same. Section 1089(a) covers "damages for personal injury…caused by the negligent or wrongful act or omission of any physician…" and Section 233(a) covers "damages for personal injury…resulting from the performance of medical, surgical, dental, or related functions…" Likewise, both statutes state that such an action shall "be exclusive of any other civil action or proceeding by reason of the same subject matter." 10 U.S.C. § 1089(1); 42 U.S.C. § 233(a). As such, the Supreme Court's reasoning regarding the exclusivity of the remedy under Section 233(a) is equally applicable to Section 1089(a):

> Section [1089(a)] grants absolute immunity to [active duty military physicians] for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. By its terms, [Section 1089(a)] limits recovery for such conduct to suits against the United States. The breadth of the words "exclusive" and "any" supports this reading, as does the provision's inclusive reference to all civil proceedings arising out of "the same subject-matter."

*Hui*, 559 U.S. at 806. Plaintiff has not cited any support for his argument that his request for injunctive relief takes his tort claim outside of the Gonzalez Act immunity, and *Hui* is not distinguishable.

10

1    Accordingly, as the Complaint is currently pled, the United States must be substituted for

2    Dr. Reed-Maldonado pursuant to the Gonzalez Act. In that circumstance, the FTCA is the only

3    remedy for her allegedly tortious acts.

### B. Plaintiff's Claims and the FTCA

The FTCA "waives the sovereign immunity of the United States for actions in tort" and "vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees." *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) (quotation marks and citation omitted). Substantively, the FTCA provides that the United States may be held liable for the wrongful acts or omissions of federal employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "However, the [FTCA] further provides that before an individual can file an action against the United States in district court, [he] must seek an administrative resolution of [his] claim." *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992).

Plaintiff pleads two claims for relief against Dr. Reed-Maldonado—now the United States. First, that Dr. Reed-Maldonado violated the Unruh Act, Cal. Civil Code § 51, by denying him full and equal access to her services because of his "disabilities (anxiety and panic attacks; congenital swallowing disorder) and or sexual orientation." (SAC at ¶ 49.) Second, that Dr. Reed-Maldonado violated his rights under the Fourth Amendment when she committed a sexual battery on him during the course of his May 22, 2016 office visit. The government insists that both claims must be dismissed.

As for Plaintiff's Section 1983 claim, the government is correct that a party cannot bring a claim for denial of a federal constitutional right under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right…the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."). Accordingly, Plaintiff's Section 1983 claim against the United States is dismissed.

Plaintiff's Unruh Act claim, however, is maintainable under the FTCA. *See Delta Sav.*

11

*Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001). The government insists that even if this is true as a general matter, it is not true here because a physician does not qualify as a "business establishment" under the Unruh Act relying on *Doe v. California Lutheran High Sch. Assn.*, 170 Cal. App. 4th 828, 831 (2009). *Doe* is inapposite. It addressed whether a nonprofit, private, religious high school was a "business establishment" under the Unruh Act and not whether a physician providing medical services could be sued under the Unruh Act. The Unruh Act provides that

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51. The California Supreme Court has held that "business establishment" under the Unruh Act must be read in the "broadest sense reasonably possible." *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 689 (1998) ("[the] term 'business establishments' was used in the broadest sense reasonably possible. The word 'business' embraces everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.'"). Further, California courts have held that "[a] medical doctor is not immune from the broad sweep of the [Unruh] Act." *Maureen K. v. Tuschka*, 215 Cal. App. 4th 519, 522 (2013); *see also Washington v. Blampin*, 226 Cal. App. 2d 604, 606 (1964) (holding that business establishments under the Unruh Act "include the services of a physician"). The Court therefore denies the government's motion to dismiss to the extent that it is predicated on the argument that Plaintiff cannot state a claim under the Unruh Act.

However, to the extent that the government's motion to dismiss is also predicated on Plaintiff's failure to administratively exhaust his claim, the motion must be granted. The FTCA provides that "[a]n action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...." 28 U.S.C. 2675(a). There is no dispute that Plaintiff has not exhausted his Unruh Act claim or any claim arising from Dr. Reed-Maldonado's

1 conduct. Because "the FTCA bars claimants from bringing suit in federal court until they have
2 exhausted their administrative remedies" the Court must grant the government's motion to dismiss
3 Plaintiff's presumed FTCA claim for failure to exhaust. *McNeil v. United States*, 508 U.S. 106,
4 113 (1993); *see also Valadez–Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) ("The
5 requirement of an administrative claim is jurisdictional. Because the requirement is jurisdictional,
6 it must be strictly adhered to. This is particularly so since the FTCA waives sovereign immunity.
7 Any such waiver must be strictly construed in favor of the United States.") (internal citations and
8 quotation marks omitted).

## CONCLUSION

For the reasons stated above, the government's motion to substitute itself in place of Dr. Reed-Maldonado is GRANTED provisionally. As Plaintiff may not have been aware of the scope of employment issue at the time he amended his complaint, the Court will grant him leave to amend the allegations as to Dr. Reed-Maldonado, but only to the extent he can do so in good faith. Plaintiff is also granted leave to amend to allege facts establishing equitable estoppel, again assuming Plaintiff can do so in good faith. If Plaintiff does not amend, or upon amendment Plaintiff is unable to allege facts that take Dr. Reed-Maldonado's conduct outside the scope of her employment, or to state an equitable estoppel affirmative defense, then (1) the United States is the proper defendant in place of Dr. Reed-Maldonado, (2) the section 1983 claim must be dismissed without leave to amend, and (3) the Unruh Act claim must be treated as an FTCA claim and dismissed without prejudice for failure to exhaust administrative remedies.

Any amended complaint must be filed within 20 days of the date of this Order.

This Order disposes of Docket No. 69.

**IT IS SO ORDERED.**

Dated: April 24, 2019

*[signature]*

JACQUELINE SCOTT CORLEY
United States Magistrate Judge